**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| WIDALYS SANTIAGO, M.D.,<br><br>*Plaintiff,*<br><br>v.<br><br>ROBERT WILKIE, Secretary, Department of Veterans Affairs,<br>*Defendants,* | Case No. CIV-17-454-RAW |

**ORDER AND OPINION**[1]

Plaintiff filed this action in the United States District Court for the Northern District of Florida on June 2, 2017 [Docket No. 1]. The action was transferred to this court on December 12, 2017 [Docket No. 14]. Plaintiff filed an Amended Complaint on September 12, 2018 [Docket No. 35].

Plaintiff claims violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. She alleges that in 2013, she applied for two positions as a primary care physician at the VA Medical Center in Muskogee, Oklahoma, and was denied both positions on the basis of her national origin and her gender [Docket Nos. 1 and 35].[2] Plaintiff received a Notice of Right to Sue letter from the Equal Employment Opportunity Commission (hereinafter "EEOC") on March 6 2017.

[1] For clarity and consistency herein, when the court cites to the record, it uses the pagination assigned by CM/ECF.

[2] Plaintiff filed her Complaint and her Amended Complaint *pro se*. The court construes liberally the pleadings of all *pro se* litigants. *Hall v. Bellmon*, 93 F2d 1106, 1110 (10th Cir. 1991). On February 20, 2019, Plaintiff's newly hired attorney entered an appearance in this action and has since made several filings on her behalf, including a response and a sur-reply to the motion for summary judgment.

Now before the court is Defendant's motion for summary judgment [Docket No. 68].[3] For the reasons set forth below, the motion is hereby granted.

## I. Standard of Review

The court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In applying the summary judgment standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). At this stage, however, Plaintiff may not rely on mere allegations, but must have set forth, by affidavit or other evidence, specific facts in support of the Complaint. *Id.*

"Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment." *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003) (citation omitted).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

[3] Also before the court are the response, reply, and sur-reply [Docket Nos. 93, 102, and 113].

While at the summary judgment stage evidence need not be submitted in a form that would be admissible at trial, the substance of the evidence must be admissible. *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006). "[A]ffidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). Similarly, "[t]estimony which is grounded on speculation does not suffice to create a genuine issue of material fact to withstand summary judgment." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004).

Additionally, unauthenticated documents "cannot support a summary judgment motion, even if the documents in question are highly probative of a central and essential issue in the case." *Bell v. City of Topeka, Kan.*, 496 F.Supp.2d 1182, 1185 (D. Kan. 2007) (citation omitted). "To determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury." *Argo*, at 1199 (citation omitted).

## II. <u>Timeliness</u>

***Gender Discrimination Claim***

Defendant argues that it is entitled to summary judgment as to any claim for gender discrimination. Plaintiff mentioned gender discrimination in her Amended Complaint filed on September 12, 2018. Plaintiff notes that this was the first notice of any such claim, and that it was not raised or alleged at the administrative level as required by 29 C.F.R. 1614.106(c). Defendant further notes that Plaintiff has not submitted any evidentiary support for such a claim. The court agrees. Furthermore, Plaintiff does not respond to these arguments or mention a

gender discrimination claim in her response or sur-reply. Summary judgment is granted as to any gender discrimination claim.

***National Origin Discrimination Claim***

Defendant also argues that Plaintiff's claims are time barred because she failed to properly exhaust her administrative remedies. A person who believes they have been discriminated against on the basis national origin must initiate contact with an EEOC Counselor within 45 days of the effective date of the action. 29 C.F.R. § 1614.105(a)(1).

> *The agency or the Commission* shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient *by the agency or the Commission*.

29 C.F.R. § 1614.105(a)(1) (emphasis added).

Plaintiff applied for the two positions in 2013. Plaintiff knew or should have known that she was not hired for either position at least as early as May 15, 2014. See Docket No. 68-5, at 8. Plaintiff, however, claims that she was not aware of the time limits. See Docket No. 93-6, at 4. Plaintiff contacted the EEOC Counselor on August 7, 2015 and filed her EEOC complaint on October 28, 2015. See Docket No. 68-2, at 1.

Plaintiff claims that she received the Notice of Right to Sue letter on March 6, 2017. Docket No. 1, at 10. The letter was dated February 28, 2017 and informed her that she could file a civil action within 90 days of receipt. The 45-day time limit was clearly extended by the agency or the Commission, as allowed by the regulations. Docket No. 1, at 15-18. She filed this action within 90 days of receipt of the Notice of Right to Sue letter. Viewing the evidence and

drawing reasonable inferences therefrom in the light most favorable to Plaintiff, the court finds Plaintiff's claims based on national origin discrimination are timely filed.

## III. *McDonnell Douglas* Burden-Shifting Analysis

Title VII prohibits the failure or refusal to hire an individual on the basis of national origin. Such discrimination can be proven by direct or circumstantial evidence. *Anaeme v. Diagnostek, Inc*., 164 F.3d 1275, 1278 (10th Cir. 1999)(citations omitted). It is undisputed that Plaintiff has no direct evidence of discrimination in this case and that the burden-shifting analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is applicable.

When a plaintiff must prove her case by circumstantial evidence, she must first make out a *prima facie* case of discrimination. *Id*. (citation omitted). To establish a *prima facie* case of discrimination under Title VII, Plaintiff must demonstrate that she: (1) applied for an available position; (2) was qualified for the position; and (3) "was rejected under circumstances which give rise to an inference of unlawful discrimination." *Id*. (citing, *inter alia*, *McDonnell Douglas*, 411 U.S. at 802). "The establishment of the plaintiff's *prima facie* case creates a presumption that the defendant unlawfully discriminated against the plaintiff." *Id*.

"The defendant then must articulate a legitimate, nondiscriminatory reason for the failure to hire the plaintiff." *Id*. This is a burden of production; the burden of persuasion remains at all times with the plaintiff. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1981). If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted." *Id*. A plaintiff then has the burden to prove that the proffered reasons offered by the defendant are a pretext for unlawful discrimination. *Id*. at 508; *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255-56 (1981).

Plaintiff argues that the burden-shifting analysis has no application at the summary judgment stage. Citing *Hicks* and *United States Postal Serv. Bd. Of Governors v. Aikens*, 460 U.S. 711 (1983), Plaintiff argues that once she has established a *prima facie* case and Defendant has countered with legitimate, non-discriminatory reasons for its actions, the case must then go to the jury. Plaintiff is mistaken. Genuine disputes of material fact are decided by a jury. If there is no genuine dispute of material fact, summary judgment will be granted. Courts regularly apply the *McDonnell Douglas* framework at the summary judgment stage to determine whether there is a genuine dispute of material fact. The Tenth Circuit has stated that "once the *McDonnell Douglas* framework of presenting proof is *complete, we are left with the single overarching issue* whether the plaintiff has adduced sufficient evidence to warrant the trier of fact's determination that adverse employment action was taken against him on the basis of race." *Anaeme*, at 1279 (emphasis added) (citation and internal quotations and brackets omitted). Thus, if a plaintiff has not adduced sufficient evidence to warrant a jury's determination in her favor – i.e., there are no genuine issues of material fact – summary judgment will be granted.

***Prima Facie Case***

Defendant concedes that Plaintiff has demonstrated the first two elements of her *prima facie* case. Defendant argues, however, that Plaintiff has failed to show that she "was rejected under circumstances which give rise to an inference of unlawful discrimination." Plaintiff maintains that she established the third element through the facts discussed below.

First, one of Defendant's interviewers, Dr. Tuana Diep, questioned Plaintiff about her national origin and the reasons she was seeking employment in Oklahoma. *Plaintiff's Affidavit*, Docket No. 93-6, at 4. This fact does not give rise to an inference of unlawful discrimination. As Defendant argues, these are basic interview questions. Interviewers routinely ask candidates

their reasons for relocating when the applied-for-position requires the employee's physical presence. Further, the court agrees that statements and questions that "merely acknowledge" an individual's national origin "do not support an inference of discriminatory animus." *Pasha v. William M. Mercer Consulting, Inc*., No. ooCIV.8362RWS, 2004 WL 188077, at *4 (S.D.N.Y. Feb. 2, 2004).

Second, after her interviews, when Plaintiff asked Dr. Diep how she could improve her chances for employment, he told her that she should consider returning to Puerto Rico. *Plaintiff's Affidavit*, Docket No. 93-6, at 4. Again, this fact does not give rise to an inference of unlawful discrimination. Plaintiff did not have a license to practice in Oklahoma; her license to practice was in Puerto Rico. *Id*. at 5. With her Puerto Rico license, Plaintiff could work as a physician at any VA in the United States. *Id*. Without state reciprocity, however, Plaintiff could not work as a physician in private practice. In Oklahoma, Plaintiff applied exclusively for jobs at the VA. *Plaintiff's Depo*., Docket No. 102-1, at 2. She applied for one job outside of the VA in Florida. *Id*.

Given Plaintiff's lack of a license to practice in Oklahoma, her license to practice in Puerto Rico, and her limited experience,[4] Dr. Diep's response to Plaintiff's question was reasonable and does not give rise to an inference of unlawful discrimination. Dr. Diep's response was clearly focused on her licensure location and limited experience. Again, statements or questions that merely acknowledge an individual's national origin "do not support an inference of discriminatory animus." *Pasha*, 2004 WL 188077, at *4. See also, *Nguyen v. Department of Corrs. and Cmty. Servs*., 169 F.Supp.3d 375, 389 (S.D.N.Y. 2016)("Simply put,

---

[4] At the time of her interviews, Plaintiff's experience consisted of a fourteen-month full-time internship and three years of part-time experience. See Defendant's Undisputed Fact # 6 and Plaintiff's Response thereto, Docket Nos. 68, at 3 and 93, at 3.

Plaintiff cannot make out a *prima facie* case based on questions [or statements] related to his race or national origin that provide no inference of discrimination, especially considering Plaintiff himself raised those subjects."). Here, Plaintiff raised the subject of how she might improve her chances for employment; even given her Puerto Rico license alone, Dr. Diep's response was reasonable and provided no inference of discrimination.

Third, in his Affidavit, Dr. Diep stated:

> For the record, I have spent a total of 20 hours answering questions, making copies for HR for this frivolous case. I could have use these hours helping our Veterans/patients. This is a beautiful, wonderful country when things like this can happen. I came to this country as a Vietnamese refugee. I arrived in April 15th, 1980 with absolutely nothing (no money, no luggage, just the clothes that I had on my body), unable to speak a word of English. Nine years later, I got admitted into University Oklahoma College of Medicine and already go a BS degree in Chemistry and BS degree in Pharmacy. I was attending University of Texas Dental School in Houston, Texas when I got admitted to OU Medical School. I know about discrimination, I have faced it myself, I do not condone it, I do not practice discrimination. I however believe in hard work and earned what you have the RIGHT way. I never have to make a complaint, I just work and this wonderful country has rewarded me with plenty. Freedom is the most wonderful thing that this country has given me. The same freedom that some individuals elect to abuse and in the process create unnecessary work for others. The lack of principal, and work ethic is appalling and these people have took time away from the Veterans who have worked hard to provide them with the most precious thing in the world: Freedom. I cannot serve the patients/Veterans when I have to spend time answering this frivolous case.

*Diep Affidavit*, Docket No. 93-12, at 13. Plaintiff would have this court take particular words from this paragraph out of context to create an inference of discrimination. When Dr. Diep refers to "these people," he is clearly referring Plaintiff (and perhaps others who bring similar complaints or lawsuits) and expressing his frustration with the time he has expended responding to this action. He also very clearly states that he himself has faced discrimination, that he does not condone it, and that he does not practice it. Nothing in this paragraph gives rise to an inference of national origin discrimination. Dr. Diep is simply expressing his exasperation for his time expended on this (and perhaps any similar) lawsuit.

Fourth, Plaintiff argues that the interviewers' handwritten notes "do not accurately reflect the content or quality of the responses I gave to the questions asked during my interviews." *Plaintiff's Affidavit*, Docket No. 93-6, at 4. See also *Plaintiff's Depo*., Docket No. 113-1, at 3-9. Again, this does not give rise to an inference of unlawful discrimination. Other than her own statement, Plaintiff has offered no evidentiary support that she performed better in the interviews than perceived by the interviewers. Moreover, Plaintiff's opinion of the interview is irrelevant, as "[i]t is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance." *Kelley v. Goodyear Tire and Rubber Co*., 220 F.3d 1174, 1177-78 (10th Cir. 2000).

Fifth, Plaintiff argues that she was informed that the first position for which she applied had been "cancelled" when it had actually been "extended," and that she was not provided the opportunity to interview alongside other qualified applicants. *Plaintiff's Affidavit*, Docket No. 93-6, at 4. In fact, Plaintiff did interview for the position, as stated in her Complaint. Plaintiff cites to a page that states that no selection was made and the position would be reposted. Docket No. 93-9, at 2. Even if the position was reposted, this does not give rise to an inference of unlawful discrimination.

Sixth, Plaintiff argues that an inference of unlawful discrimination can be made based on Dr. Diep's testimony that he was aware of her national origin prior to her first interview in July of 2013 and that later correspondence from the VA's Supervisory HR Specialist, Annette Rogers, in August of 2014 indicated the position was "cancelled" and that the national origin of the applicants was unknown. Docket No. 93-10, at 2. Plaintiff has not brought forth any evidence that this was some sort of nefarious coverup. Ms. Roger's memorandum came over a year after Plaintiff's first interview. There is no evidence that she knew Plaintiff's national

origin.  Taking these facts as true, they do not give rise to an inference of unlawful discrimination.

Plaintiff has failed to show that she "was rejected under circumstances which give rise to an inference of unlawful discrimination." The court also notes that the above facts, collectively, do not give rise to an inference of unlawful discrimination.  Plaintiff has failed to establish a *prima facie* case of unlawful discrimination.

***Defendant's Stated Reasons for Not Hiring Plaintiff / Pretext***

Even if Plaintiff had established a *prima facie* case, which she did not, Defendant has offered legitimate, non-discriminatory reasons for its refusal to hire her.  At the time of her interviews, with a fourteen-month full-time internship and three years of part-time experience, Plaintiff had a very limited amount of experience working as a physician.  See Defendant's Undisputed Fact # 6 and Plaintiff's Response thereto, Docket Nos. 68, at 3 and 93, at 3.  The first position was not filled,[5] but the second position was filled by an applicant with more than thirty years of experience as a practicing physician and an employment history that contained to substantive gaps in time.  See Defendant's Undisputed Fact # 30 and Plaintiff's Response thereto, Docket Nos. 68, at 5 and 93, at 5.  Plaintiff was clearly less qualified than applicant who was hired.

Despite Plaintiff's objecting opinion, Defendant also cited Plaintiff's poor interview performance as a reason for its failure to hire her.  Defendant's Undisputed Fact #s 19, 20, and

[5] See Defendant's Undisputed Fact #21 and Plaintiff's Response thereto, Docket No. 68, at 4 and 93, at 4.

28 and Plaintiff's Response thereto, Docket Nos. 68, at 4-5 and 93, at 4-5. As noted above, Plaintiff's opinion about her interview performance is not relevant.[6]

As Defendant has offered legitimate, non-discriminatory reasons for its refusal to hire her, any *prima facie* presumption is rebutted, and Plaintiff has the burden to prove that the proffered reasons offered by Defendant are a pretext for unlawful discrimination. Plaintiff has not carried this burden; she merely recites the same arguments given for her *prima facie* case. There is no genuine issue of material fact for trial. Accordingly, the motion for summary judgment is granted.

## IV. Conclusion

For the reasons set forth herein, Defendant's amended motion for summary judgment [Docket No. 68] is GRANTED. The remaining motions are deemed MOOT.

**IT IS SO ORDERED** this 13th day of May, 2019.

Ronald A. White
United States District Judge
Eastern District of Oklahoma

[6] The court does not agree with Plaintiff's interpretation of Defendant's argument. Docket No. 113, at 5. Defendant does not argue that if an employer cites poor interview performance as a reason for failure to hire that summary judgment must be granted. Defendant simply pointed out that an interviewee's subjective opinion of her performance, without more, will not overcome the interviewer's opinion.